EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Norma Pizarro Rivera<br>    Peticionaria<br><br>    v.<br><br>Pedro Nicot Santana<br>    Recurrido | Certiorari<br><br>2000 TSPR 132 |

Número del Caso: CC-1999-0400

Fecha: 12/Septiembre/2000

Tribunal de Circuito de Apelaciones: Circuito Regional I

Juez Ponente: Hon. Alfonso de Cumpiano

Abogadas de la Parte Peticionaria:

                Lcda. Janice M. Guitierrez Lacourt
                Lcda. Olga López Báez
                Lcda. Ivis F. Fernández Pastrana

Abogados de la Parte Recurrida:

                Lcdo. Luis E. Pinto Andino
                Lcda. Jane Hoffman

Materia: Ley de Protección

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Norma Pizarro Rivera

    Demandante-peticionaria

       v.                      CC-1999-400        CERTIORARI

Pedro Nicot Santana

    Demandado-recurrido

**Opinión del Tribunal emitida por el Juez Asociado SEÑOR REBOLLO LOPEZ**

**San Juan, Puerto Rico, a 12 de septiembre de 2000**

El 15 de enero de 1999, la señora Norma Pizarro Rivera acudió a la Sala de Investigaciones de San Juan solicitando una orden de protección contra el Lcdo. Pedro Nicot Santana. Dicha solicitud fue declarada con lugar, ex parte, por el magistrado de turno, haciéndose extensiva la misma hasta enero de 2004. Mediante la orden emitida se instruyó al Lcdo. Nicot Santana para que se abstuviera de molestar, intimidar, amenazar o de cualquier forma interferir con la peticionaria, la Sra. Pizarro Rivera.

Varios días después, el 22 de febrero de 1999, el Lcdo. Nicot Santana acudió al Centro Judicial de San Juan en solicitud, a su vez, de una orden de protección contra la Sra. Pizarro Rivera. Ese

mismo día, un juez de dicho Centro Judicial dictó orden de protección, ex-parte, a favor del Lcdo. Nicot Santana, y citó a las partes para una vista a celebrarse el 2 de marzo de ese año.

Posteriormente, el Lcdo. Nicot Santana presentó una "SOLICITUD DE REMEDIO URGENTE (A MODO DE INJUNCTION)", en donde alegó que no fue citado a la vista donde se expidió la orden de protección en su contra, según requiere el Artículo 2.4 de la Ley Núm. 54 de 15 de agosto de 1989, 8 L.P.R.A. sec. 622, y que Pizarro Rivera indujo a error al tribunal para que se emitiera dicha orden. Además, alegó que la Sra. Pizarro Rivera había estado enviado copias de la orden de protección dictada, contra el Lcdo. Nicot Santana, a personas e instituciones relacionadas con éste, con la única intención de causarle daño a su imagen y reputación. Finalmente, el Lcdo. Nicot Santana solicitó: que se dejara sin efecto la orden dictada en su contra; que se determinara que las actuaciones de la Sra. Pizarro Rivera constituyen un hostigamiento continuo y permanente contra éste; y que se ordenara a la Sra. Pizarro Rivera a abstenerse de penetrar o estar en los alrededores de la residencia de éste.

El día de la vista, la Sra. Pizarro Rivera presentó una moción de desestimación y de reconsideración de orden de protección ex-parte. En la misma, solicitó que se desestimara la solicitud de remedio urgente y se reconsiderara la orden de protección ex-parte expedida en

su contra. Fundamentó su solicitud en que de la moción de remedio urgente no se desprendían hechos que justificaran la concesión de dicha orden y que, según la doctrina de cosa juzgada, el tribunal carecía de jurisdicción para modificar la orden emitida el 15 de enero de 1999, a favor de la Sra. Pizarro Rivera. Declarada sin lugar la moción, el tribunal procedió a celebrar la vista. Finalizada la misma, el tribunal dictó órdenes de protección "<u>recíprocas</u>", vigentes ambas hasta el 2 de marzo de 2004.

Inconforme con la orden de protección dictada en su contra, el 8 de marzo de 1999, la señora Pizarro Rivera recurrió mediante petición de *certiorari* al Tribunal de Circuito de Apelaciones. En la misma, alegó que, el tribunal de instancia había errado al dictar la orden recurrida pues la prueba presentada no era constitutiva de violencia doméstica al amparo de la Ley Núm. 54, ante. Además, adujo que el juez que presidió la vista, el Hon. Manuel Cabán Soto, desplegó conducta parcializada y discriminatoria, por razón de género, durante la vista contra ella y su representación legal. Ese mismo día, la señora Pizarro Rivera presentó moción en auxilio de jurisdicción mediante la cual solicitó del Tribunal de Circuito de Apelaciones que dejara sin efecto la orden recurrida hasta tanto evaluara la petición de *certiorari*.

El 9 de marzo de 1999, el tribunal intermedio apelativo emitió resolución negándose a paralizar la orden de protección dictada en contra de la señora Pizarro Rivera y

ordenó a ésta mostrar causa por la cual no debía desestimar el recurso por ser el asunto de la competencia del Tribunal Superior, según dispone el Artículo 2.2 de la Ley Núm. 54. La Sra. Pizarro Rivera compareció y sostuvo que, según el esquema creado por la Ley de la Judicatura de 1994, según enmendada por la Ley Núm. 248 del 25 de diciembre de 1995, 4 L.P.R.A. sec. 22 *et seq*, el Tribunal de Circuito de Apelaciones es el foro que tiene competencia para atender el recurso de revisión.

El 28 de abril de 1998, el Tribunal de Circuito de Apelaciones emitió resolución mediante la cual se negó a ejercer su función revisora. Dispuso que, a pesar de que el Artículo 2.2 de la Ley Núm. 54, ante, confiere la posibilidad de diversas acciones, a saber, denegar el recurso, requerir al juez que dictó las órdenes que formule determinaciones de hecho y conclusiones de derecho que permitan la revisión, la ausencia de récord o grabación de los testimonios prestados en el caso y/o de una transcripción o exposición narrativa de la prueba, no le permitía estar en condiciones para revisar las órdenes de protección en controversia, ya que los señalamientos de error de la Sra. Pizarro Rivera iban dirigidos a impugnar la apreciación de la prueba testifical ofrecida en la vista y la actuación alegadamente discriminatoria del juzgador. Finalmente, fundamentándose en el citado Artículo 2.2 de la Ley Núm. 54, ante, ordenó el traslado del recurso a la Sala Superior de San Juan del Tribunal de Primera Instancia,

para que dicho tribunal adjudicara los planteamientos de Pizarro Rivera mediante la celebración de una vista.

De la determinación del Tribunal de Circuito de Apelaciones, el 1 de junio de 1999, la Sra. Pizarro Rivera presentó solicitud de *certiorari* ante este Tribunal imputándole al Tribunal de Circuito haber errado:

> "...al renunciar a su función revisora y trasladar el caso al Tribunal de Primera Instancia para la celebración de vista evidenciaria."

En síntesis, a través de la discusión de su único señalamiento de error, aduce la peticionaria Pizarro Rivera que: las órdenes de protección son revisables, según dispone el Artículo 2.2 de la Ley 54, ante; que el único foro con jurisdicción para atender un recurso de revisión de una orden de protección, conforme dispone la Ley de la Judicatura de 1994, ante, es el Tribunal de Circuito de Apelaciones; y que la orden de traslado al tribunal superior para que se celebre una nueva vista evidenciaria es contraria a la Ley de la Judicatura de 1994, ante.

El 16 de julio de 1999, _expedimos_ el recurso. Estando en condiciones de resolver el mismo, procedemos a así hacerlo.[1]

---

[1] La Ley Núm. 54 del 15 de agosto de 1989, 8 L.P.R.A. sec. 622 y ss. --conocida como la Ley para la Prevención e Intervención con la Violencia Doméstica-- establece que cualquiera que haya sido víctima de "violencia doméstica", en el contexto de una "relación de pareja", podrá solicitar una "orden de protección". Del expediente no surge qué "relación de pareja" une, o unía, a la Sra. Norma Pizarro Rivera y al Lcdo. Pedro Nicot Santana. Presumimos, sin

I

Reiteradamente hemos resuelto que es "principio cardinal de hermenéutica que '[a]l interpretar una disposición específica de una ley, los tribunales deben siempre considerar cuáles fueron los propósitos perseguidos por la Asamblea Legislativa al aprobarla y nuestra determinación debe atribuirle un sentido que asegure el resultado que originalmente se quiso obtener'... Nuestra obligación fundamental en estos casos, es imprimirle efectividad a la intención legislativa, propiciando de esta forma la realización del propósito que persigue la ley... Al interpretar y aplicar un estatuto hay que hacerlo teniendo presente el propósito social que lo inspiró..." (Citas omitidas). Vázquez v. Administración de Reglamentos y Permisos, 128 D.P.R. 513 (1991); González Pérez v. E.L.A., res. el 26 de abril de 1995, 138 D.P.R.__ (1995).

A toda ley le daremos la interpretación que mejor responda a los propósitos que persigue. Interpretaremos la ley como un ente armónico, dándole sentido lógico a sus diferentes secciones, supliendo las posibles deficiencias cuando esto fuere necesario. González Pérez v. E.L.A., ante; Zambrana v. E.L.A., 129 D.P.R. 740 (1992); Gobernador de P.R. v. Alcalde de Coamo, 131 D.P.R. 614 (1992); Torres v. Castillo Alicea, 111 D.P.R. 792 (1981); Bernier y Cuevas

---

embargo, que existe, o existió, esa "relación de pareja" entre estas personas al momento de la expedición de las órdenes pues ni ellos, ni el tribunal de primera instancia, ni el Tribunal de Circuito de Apelaciones han cuestionado dicho asunto.

Segarra, Aprobación e Interpretación de las Leyes en Puerto

Rico, 2da ed. rev., San Juan, Pub. J.T.S., Inc., 1987.

Además, cuando exista un conflicto irreconciliable

entre una nueva disposición y estatutos previos sobre una

misma materia, la nueva disposición será la que controle o

prevalezca, ya que constituye la última expresión del

legislador. Díaz v. Srio. de Hacienda, 114 D.P.R. 865, 874

(1983).

II

La Ley Núm. 54, ante, conocida como "Ley para la

Prevención e Intervención con la Violencia Doméstica",

tiene como propósito establecer un conjunto de medidas

dirigidas a prevenir y combatir la violencia doméstica. A

esos fines, le otorga a los jueces la facultad para

"dictar medidas afirmativas de protección a las víctimas a

través de la expedición de órdenes dirigidas al agresor

para que se abstenga de incurrir en determinada conducta

con respecto a la víctima", proveyendo un procedimiento

ágil, el cual facilita la solución inmediata de las

controversias.[2] Exposición de Motivos, Ley Núm. 54 de 15 de

agosto de 1989.

---

[2] Antes de la aprobación de la Ley Núm. 54, las personas se veían obligadas a utilizar la Ley 140 de 1970, según enmendada, sobre Controversias y Estados Provisionales de Derecho; sin embargo, dicha ley no cubría todas las áreas y no había uniformidad en los procedimientos.

La Ley 54, ante, dispone que "[c]ualquier persona que haya sido víctima de violencia domestica[3]...podrá radicar...una petición en el tribunal y solicitar una orden de protección, sin que sea necesaria la radicación previa de una denuncia o acusación. <u>Cuando el tribunal determine que existen motivos suficientes para creer que la parte peticionaria ha sido víctima de violencia doméstica, podrá emitir una orden de protección</u>".[4] (Enfasis suplido.)

---

[3] La Ley Núm. 54 define violencia doméstica como "un patrón de conducta de empleo de fuerza física o psicológica, intimidación o persecución contra una persona por parte de su cónyuge, ex-cónyuge, una persona con quien cohabita o haya cohabitado, con quien sostiene o haya sostenido una relación consensual o una persona con quien se haya procreado una hija o un hijo, para causarle daño físico a su persona, sus bienes o a la persona de otro o para causarle grave daño emocional". 8 L.P.R.A. sec. 602 (k).

[4] "Dicha orden podrá incluir, sin que se entienda como una limitación, lo siguiente:

(a) Adjudicar la custodia provisional de los niños y niñas menores de edad de la parte peticionaria.
(b) Ordenar a la parte peticionada desalojar la residencia que comparte con la parte peticionaria, independientemente del derecho que se reclame sobre la misma.
(c) Ordenar a cualquiera de las partes abstenerse de molestar, hostigar, perseguir, intimidar, amenazar o de cualesquiera otra forma interferir con el ejercicio de la custodia provisional sobre los menores que ha sido adjudicada a una de éstas.
(d) Ordenar a la parte peticionada abstenerse de penetrar en cualquier lugar donde se encuentre la parte peticionaria, cuando a discreción del tribunal dicha limitación resulte necesaria para prevenir que la parte peticionada moleste, intimide, amenace o de cualquier otra forma interfiera con la parte peticionaria o con los menores cuya custodia provisional le ha sido adjudicada.
(e) Ordenar a la parte peticionada pagar una pensión para los menores cuando la custodia de éstos haya sido adjudicada a la parte peticionaria, o para los menores y la parte peticionaria cuando exista una obligación legal de así hacerlo.

Como norma general, luego de presentada la petición de orden de protección, el tribunal cita a las partes, bajo apercibimiento de desacato, para una vista a celebrarse dentro de los siguientes cinco (5) días. Celebrada la vista, el tribunal determina si procede o no la orden de protección. 8 L.P.R.A. sec. 624. La Ley Núm. 54, ante,

---

(f)    Prohibir a la parte peticionada esconder o remover de la jurisdicción a los hijos e hijas menores de las partes.

(g)    Prohibir a la parte peticionada disponer en cualquier forma de los bienes privativos de la parte peticionaria o los bienes de la sociedad legal de gananciales o la comunidad de bienes, cuando los hubiere. Disponiéndose, que cuando se trate de actos de administración de negocio, comercio o industria la parte contra la cual se expida la orden deberá someter un informe financiero mensual al tribunal de sus gestiones administrativas.

(h)    Ordenar cualesquiera medidas provisionales respecto a la posesión y uso de la residencia de las partes y sobre aquellos bienes muebles enumerados y comprendidos en los incisos (1), (2), (3), (4), (4)(a), (5) y (6) de la sec. 1130 del Título 32 la cual establece las propiedades exentas de ejecución.

(i) Ordenar a la parte peticionada pagar una indemnización económica de su caudal privativo por los daños que fueren causados por la conducta constitutiva de violencia doméstica. Dicha indemnización podrá incluir, pero no estará limitada a compensación por gastos de mudanza, gastos por reparaciones a la propiedad, gastos legales, gastos médicos, psiquiátricos, psicológicos, de consejería, orientación, alojamiento, albergue y otros gastos similares, sin perjuicio de otras acciones civiles a las que tenga derecho la parte peticionaria.

(j) Ordenar a la parte promovida a entregarle a la Policía de Puerto Rico para su custodia, bien sea con carácter temporero, indefinido o permanente, cualquier arma de fuego perteneciente al promovido y sobre la cual se le haya expedido una Licencia de Tener o Poseer, o de Portación, o de tiro al blanco, según fuere el caso, cuando a juicio del Tribunal dicha arma de fuego puede ser utilizada por el promovido para causarle daño corporal al peticionario, o a los miembros de su núcleo familiar.

establece que de concederse la orden de protección, ésta "debe incluir las órdenes emitidas por el tribunal, los remedios ordenados y el periodo de su vigencia"; "fecha y hora en que fue expedida...y que cualquier violación [a la misma] puede conllevar pena de cárcel, multa o ambas". 8 L.P.R.A. sec. 626.

A manera de excepción, la orden de protección puede ser dictada ex-parte, es decir, sin la comparecencia de la persona en contra de quien se expide cuando el tribunal haya determinado: que se han hecho gestiones diligentes para citar a la parte y éstas han sido infructuosas; que de citarse a la parte previamente se podría causar una daño irreparable; o, que existe la probabilidad sustancial de riesgo inmediato. En estos casos, la orden es de <u>carácter provisional</u>, y se cita inmediatamente a la otra parte para una vista dentro de los siguientes cinco (5) días de haberse expedido la orden ex-parte. En dicha vista, el tribunal podrá dejar sin efecto la orden o dictar la orden por el término que estime necesario. 8 L.P.R.A. sec. 625.

La controversia en el caso de autos gira alrededor de la interpretación del Artículo 2.2 de la Ley Núm. 54, ante, el cual dispone que "[t]oda orden de protección <u>podrá ser revisada</u>, en los casos apropiados, en cualquier <u>sala de superior jerarquía</u> y en aquellas instancias pertinentes, en las Salas de Relaciones de Familia". 8 L.P.R.A. sec.622.

---

(k) Emitir cualquier orden necesaria para dar cumplimiento a los propósitos y política pública de este Capítulo." 8 L.P.R.A. sec. 621.

De una lectura del precepto anterior se desprende la intención expresa del legislador de que estuviera disponible un mecanismo de revisión directa de las órdenes de protección. Debemos entonces determinar cual es el foro adecuado para la revisión de las órdenes de protección, luego del cambio acaecido en la organización del sistema judicial con la aprobación de la Ley de Judicatura de 1994, ante.

La Ley para la Prevención e Intervención con la Violencia Doméstica fue aprobada el 15 de agosto de 1989, luego de un intenso debate legislativo. A la fecha de su aprobación, el esquema organizativo judicial disponía para la revisión judicial de un tribunal de superior jerarquía. Es por esto que, en lo que respecta a la competencia del foro de instancia y refiriéndose al anterior esquema organizativo judicial, la Ley Núm. 54, ante, dispone para un procedimiento de revisión ante un tribunal de superior jerarquía o Sala de Relaciones de Familia. Es decir, al amparo de la Ley 54, ante, con anterioridad a que entrara en vigor, el 23 de enero de 1995, la Ley de la Judicatura de Puerto Rico de 1994, ante, una orden de protección emitida por un juez de distrito podía ser revisada por un juez superior.

Sin embargo, mediante el Plan de Reorganización Núm. 1 se reestructuró la Rama Judicial. Se constituyó un sistema judicial de tres etapas o niveles: un Tribunal de Primera Instancia; un tribunal apelativo intermedio, el Tribunal de

Circuito de Apelaciones; y un tribunal de última instancia, el Tribunal Supremo de Puerto Rico. Con relación al Tribunal de Primera Instancia, se consolidaron los tribunales y se dispuso específicamente que el Tribunal de Distrito quedaría abolido en ocho años (8) a partir de la vigencia de la Ley, y que permanecería durante el proceso de abolición como una subsección del Tribunal de Primera Instancia. 4 L.P.R.A. sec.22 (c) y 23(c). Como resultado de la reestructuración de la competencia del Tribunal Supremo, la creación de un tribunal de apelaciones intermedio y <u>la consolidación del tribunal de instancia</u>, la competencia apelativa de una Sala Superior del Tribunal de Primera Instancia quedó sustancialmente limitada a casos específicos determinados por ley. (citas omitidas) <u>Santiago Pérez</u> v. <u>Palmas del Mar Properties, Inc.</u>, res. el 24 de octubre de 1997, 143 D.P.R. __ (1997).

La Ley de la Judicatura de 1994, ante, específicamente establece la competencia del Tribunal de Circuito de Apelaciones respecto a la revisión de las decisiones del Tribunal de Primera Instancia. A esos efectos dispone que el Tribunal de Circuito de Apelaciones tendrá competencia para revisar <u>cualquier</u> resolución u orden del Tribunal de Primera Instancia, incluyendo el Tribunal de Distrito durante el proceso de abolición, mediante auto de *certiorari* expedido a su discreción. 4 L.P.R.A. sec. 22k(f).

Por tal razón, y como consecuencia de las disposiciones de la Ley de la Judicatura de 1994, el Artículo 2.2 de la Ley Núm. 54, ante, al referirse a una sala de superior jerarquía, debe ser interpretado como que el mismo, ahora, se refiere al Tribunal de Circuito de Apelaciones, y debemos concluir, en consecuencia, que el foro adecuado para revisar las órdenes de proteccion emitidas por el Tribunal de Primera Instancia es únicamente el referido Tribunal de Circuito de Apelaciones. Con la aprobación de la Ley de la Judicatura de 1994, ante, al consolidarse los tribunales de instancia, el tribunal superior perdió la competencia para revisar las órdenes de protección. Por lo tanto, erró el Tribunal de Circuito de Apelaciones al ordenar el traslado del recurso a la Sala Superior de San Juan, Tribunal de Primera Instancia, para que adjudicara el recurso.

Por las razones antes expresadas, procede la revocación de la resolución emitida en el presente caso por el Tribunal de Circuito de Apelaciones y devolver el caso a dicho foro apelativo intermedio para procedimientos ulteriores consistentes con lo aquí expuesto.[5]

Se dictará Sentencia de conformidad.

FRANCISCO REBOLLO LOPEZ
Juez Asociado

_____

[5] Al recibo del mandato, el Tribunal de Circuito de Apelaciones deberá instruir al tribunal de instancia para que, de inmediato, proceda a formular determinaciones de hechos y conclusiones de derecho.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Norma Pizarro Rivera

    Demandante-peticionaria

       v.                          CC-1999-400        CERTIORARI

Pedro Nicot Santana

    Demandado-recurrido


**SENTENCIA**

**San Juan, Puerto Rico, a 12 de septiembre de 2000**


**Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia revocatoria de la Resolución emitida por el Tribunal de Circuito de Apelaciones, mediante la cual ordenó el traslado del recurso de *certiorari* a la Sala Superior de San Juan del Tribunal de Primera Instancia; devolviéndose el caso a dicho foro apelativo para que atienda el recurso a tenor con lo aquí dispuesto.**

**Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Andréu García emitió Opinión disidente a la cual se unió el Juez Asociado señor Hernández Denton.**


                **Isabel Llompart Zeno**
           **Secretaria del Tribunal Supremo**

EN EL TRIBUNAL SUPREMO DE PUERTO RICO**Error! Bookmark not defined.**


Norma Pizarro  Rivera

    Peticionaria

      v.                              CC-1999-400        Certiorari

Pedro Nicot Santana

    Recurrido


Opinión disidente emitida por el Juez Presidente, señor Andréu García, a la cual se une el Juez Asociado señor Hernández Denton


San Juan, Puerto Rico a 12 de septiembre de 2000

## I

**La mayoría de este Tribunal resuelve hoy que el foro adecuado para la revisión de las órdenes de protección concedidas por jueces del Tribunal de Primera Instancia[6] es el Tribunal de Circuito de Apelaciones.  Disentimos por cuanto entendemos que a dicho tribunal no le corresponde revisar tales órdenes.  Por el contrario, dicha función corresponde al Tribunal de Primera Instancia.  Por ello, confirmaríamos la resolución recurrida.**

## II

El Art. 2.2 de la Ley Núm. 54, <u>supra</u>, dispone que una orden de protección dictada por cualquier

---

**[6] Estas órdenes de protección se expiden al amparo de la Ley Núm. 54 de 15 de agosto de 1989, según enmendada, 8 L.P.R.A. sec. 601 y ss., Ley para la Intervención y Prevención de Violencia Doméstica.**

juez del Tribunal de Primera Instancia o juez municipal "podrá ser revisada, en los casos apropiados, en cualquier sala de superior jerarquía y en aquellas instancias pertinentes en las Salas de Relaciones de Familia". 8 L.P.R.A. sec. 622. De su redacción puede colegirse, entonces, que si la orden ha sido emitida por un Juez Municipal o un Juez de Distrito, el Tribunal Superior es "Sala" de superior jerarquía.

Conviene señalar que el esquema creado por la Ley de la Judicatura de 1994 no es del todo claro, y al ejercer nuestra función revisora debemos atemperarlo a la normativa procesal vigente. Ello, cónsono con el mandato de las Reglas 70 y 71 de Procedimiento Civil, 32 L.P.R.A. Ap. III, las cuales permiten a los tribunales reglamentar su práctica o conceder remedios apropiados cuando no existan procedimientos estatutarios específicos que atiendan determinadas controversias. Aunque la ley dispone que cualquier Juez del Tribunal de Primera Instancia o Juez Municipal puede dictar una orden de protección, mediante la Orden Administrativa Núm. III de 20 de enero de 1995, emitida por el Juez Presidente con el fin de viabilizar el cumplimiento de la Ley de la Judicatura de 1994, se dispuso que toda solicitud de orden protectora al amparo de la Ley Núm. 54, supra, será presentada y atendida por los jueces municipales.

La Ley de la Judicatura de 1994 no tuvo el efecto de eliminar las categorías entre los jueces del Tribunal de Primera Instancia. Aunque suprime la división entre los foros Superior y de Distrito, aún mantiene una jerarquía entre las categorías de los jueces. Luego de la eliminación del Juez de Distrito, seguirán existiendo dos (2) categorías de jueces[7]: el Superior y el Municipal, siendo el primero de categoría superior, ya que posee competencia general, mientras que el segundo posee competencia limitada. Véase Pueblo v. Lebrón, Sentencia de 23 de octubre de 1996, Opinión concurrente del Juez Asociado señor Hernández Denton.

La disposición del Art. 2.2 de la Ley Núm. 54, supra, que se refiere a "salas de superior jerarquía" no se refiere exclusivamente al foro,

sino que se refiere más bien a la categoría del juez. Véase, de forma análoga, Pueblo v. Lebrón, supra. Por consiguiente, la eliminación de las divisiones que componían el Tribunal de Primera Instancia tras la Reforma Judicial de 1994, no es impedimento para que los jueces superiores revisen las órdenes de protección que dicten, de conformidad con la Orden Administrativa Núm. III, supra, los jueces municipales, conservando, desde luego, la jerarquía que aún les distingue.

Lo anterior cobra importancia a la luz de que el principal planteamiento que tuvo ante sí el Tribunal de Circuito de Apelaciones en este caso, se refiere a la apreciación de la prueba por parte del Juez que dictó las órdenes de protección, sobre lo cual no existe récord. Sabido es que estos procedimientos no se registran en forma alguna: ni mediante grabación, ni mediante notas taquigráficas o de estenotipia. Simplemente dicho, no hay constancia alguna que perpetúe los testimonios vertidos ante dichos magistrados. Es de conocimiento general, además, que en la inmensa mayoría de estos casos las partes comparecen ante el Juez Municipal sin representación legal; por tanto, tampoco podríamos descansar en la preparación, por las partes, de una exposición narrativa de la prueba. En el presente caso, la peticionaria alega que su conducta no constituye alguna de las modalidades que reconoce nuestro ordenamiento para que se configure una situación de violencia doméstica. Sin embargo, debido a la ausencia de un récord, o de una exposición narrativa de la prueba, tanto el tribunal intermedio apelativo como nosotros desconocemos cuál fue el testimonio completo y preciso vertido por el querellante en la vista.

El Tribunal de Circuito de Apelaciones correctamente se negó a recibir, de novo, los testimonios de las partes a los fines de revisar el dictamen judicial impugnado. Invocando su propio reglamento, adujo que necesitaba la exposición narrativa o la transcripción de la prueba oral

---

[7] **Art. 5.002 de la Ley de la Judicatura, 4 L.P.R.A. sec. 22(n).**

que desfiló ante el tribunal recurrido.[8]   No existe duda de que los tribunales apelativos no pueden resolver a base de los hechos que se exponen en los alegatos, sino que precisan de las determinaciones de hecho realizadas por el tribunal de instancia y de la transcripción o exposición narrativa de la prueba.  E.L.A. v. Mercado Carrasquillo, 104 D.P.R. 784, 789-790 (1976).

Además, hace apenas unos meses, este Tribunal resolvió, en el contexto de revisiones administrativas, que para que pudiéramos cumplir con nuestra obligación constitucional, y para que el derecho a la revisión judicial sea efectivo, es imprescindible exigir que la determinación que se revise esté fundamentada.  De lo contrario el trámite de revisión judicial sería un ejercicio fútil.  L.P.C. & D, Inc. v. A.C.T., res. el 27 de diciembre de 1999, 99 T.S.P.R. 185;  RBR Construction, S.E. v. A.C.T., res. el 22 de diciembre de 1999.

Nos pareció entonces, y reiteramos hoy, que lo dicho es la única forma en que los tribunales, al llevar a cabo su función revisora, pueden asegurarse de que la decisión no fue una arbitraria, caprichosa o irrazonable.  L.P.C. & D., Inc. v. A.C.T., supra.

III

Para concluir, debemos tener presente que las órdenes de protección son consideradas y emitidas bajo un procedimiento particular.  Éstas pueden ser presentadas en los formularios provistos por la Oficina de Administración de Tribunales para ello, por el peticionario[a] por sí, por su abogado, o por un agente del orden público, sin que sea necesaria la previa presentación de una denuncia o acusación.  Basta una determinación del tribunal de que existen motivos suficientes para creer que la parte peticionaria ha sido víctima de violencia doméstica.  Art. 2.1 de la Ley Núm. 54, 8 L.P.R.A. sec. 621.  Además, dichas órdenes pueden dictarse ex parte, de manera provisional, en aquellas circunstancias en que la ley especifica, y se recogen en formularios pre-

---

[8]Véase Reglas 19 y 20 del Reglamento del Tribunal de Circuito de Apelaciones.  4 L.P.R.A. Ap. XXII - A R. 19 y 20.

impresos.  Una vez se notifica, se señala vista en cinco (5) días, y en dicha vista podrá dejarse sin efecto la orden o extender sus efectos por el término que el Juez estime necesario.  Art. 2.5 de la Ley Núm. 54, 8 L.P.R.A. sec. 625.

En el caso particular ante nuestra consideración, los formularios de las órdenes en cuestión no contienen las determinaciones de hechos en que se fundamentan.  Lo que es peor, las órdenes de protección que emitió el juez tenían vigencia de un lustro, desde el 2 de marzo de 1999 hasta el 2 de marzo de 2004.  Resulta claro, entonces, la importancia que revisten tales procedimientos y la imposibilidad de que un tribunal apelativo revise responsablemente tales dictámenes.  Procedería, en consecuencia, y amparados en las Rs. 70 y 71 de Procedimiento Civil, supra, un juicio de novo en el Tribunal de Primera Instancia donde se pueda presentar la prueba de rigor que sea necesaria para impugnar la orden de protección emitida.  Estimamos que por la naturaleza de las órdenes de protección, sería impráctico y contrario a la solución que las mismas buscan, exigirle al Juez Municipal un proceso minucioso y riguroso en el que fundamente cada orden de protección que dicta.  Tal requerimiento ahogaría el importantísimo propósito y, desdichadamente, el cada día más necesario mecanismo de las órdenes de protección.

En fin, el Tribunal de Circuito de Apelaciones declinó ejercer su función revisora por entender que no mediaba una cuestión puramente de derecho, ya que se trataba exclusivamente de la apreciación de la prueba oral, sobre la que no tuvo dicho Foro constancia.  Determinó, además, el traslado del recurso a la Sala Superior de San Juan del Tribunal de Primera Instancia para que adjudique los planteamientos de la peticionaria a base de la prueba a ser presentada por las partes.

Por estimar sustancialmente correcta la resolución recurrida, confirmaríamos.  Como la mayoría dispone de otro modo, respetuosamente disentimos.

José A. Andréu García
Juez Presidente

José A. Andréu García
Juez Presidente